UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEVIN D. HAMLET,

    Petitioner,

    v.

WARDEN,

    Respondent.

CAUSE NO. 3:18-CV-997-JD-MGG

OPINION AND ORDER

Kevin D. Hamlet, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary hearing (ISP 18-10-0138) where a Disciplinary Hearing Officer (DHO) found him guilty of Battery in violation of Indiana Department of Correction (IDOC) offense B-212. (ECF 1 at 1; ECF 1-1 at 7.) As a result, he was sanctioned with a loss of 30 days earned credit time, a loss of commissary privileges, and placement in disciplinary restrictive housing. (*Id.*)

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-73 (1974). To satisfy due process, there must also be "some evidence" in

the record to support the guilty finding. *Superintendent, Mass Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Hamlet's charge stems from an allegation that he was involved in a fight with another inmate on October 14, 2018. He includes three separate grounds in his petition. In ground one, he argues that "[t]he conduct report and the investigation which were conducted were constitutionally deficient and insufficient to meet due process." (ECF 1 at 2.) In ground two, he argues that "[t]he DHB's report did not meet due process requirements." (*Id.*) And, in ground three, he argues that his "sanction represents 'cruel and unusual' punishment because his sanction and sentence was more severe than [the] other party involved." (*Id.* at 3.) Construing Hamlet's grounds and his accompanying explanations liberally, his arguments can be restated as follows: (1) the conduct report was inadequate; (2) he was denied evidence; (3) the evidence against him was insufficient; (4) the DHO's written statement was insufficient; and (5) his sanction was excessive and motivated by racial animus in violation of the Equal Protection Clause.[1]

Here, the Conduct Report charged Hamlet as follows:

> On 10/14/18 at 11:22AM, I Sereant [sic] K. Radats heard
> Officer Ashley Seigh yelling "hey! Stop!" from West one. I
> Sgt Radats and Oc Cuevas immediately went to west one
> and seen [sic] offender Hamlet, Kevin #892772 and offender

---

[1] The Respondent construed Hamlet's petition as containing an argument that the DHO was not impartial. (ECF 15 at 6.) Hamlet, however, has disavowed that argument in his traverse and clarified that he is instead arguing that the DHO discriminated against him in violation of the Equal Protection Clause. (ECF 20 at 1). Therefore, the court will not address whether the DHO was impartial, as required by the Due Process Clause. The Respondent has also taken the position that any argument based on the Equal Protection Clause was not raised in Hamlet's petition and that Hamlet should be precluded from raising that argument for the first time in his reply. (ECF 21 at 1-2.) Hamlet's petition, however, squarely raised the argument that his sanction was more severe than that of the other offender involved in the incident because of his race and in violation to the Equal Protection Clause. (ECF 1 at 3.) Thus, that ground will be considered by the court.

> Ensign, John #190145 fighting eachother [sic]. I called a 10-10. I gave offenders Hamlet and Ensign a direct order to stop fighting. Both offenders refused this order. I then administered a one second burst of OC to the facial area of Offender Hamlet and Offender Ensign. I then verbally ordered Offenders Hamlet and Ensign to stop fighting. Offender Ensign became compliant with orders to stop fighting, and laid on the floor, and complied with orders to be cuffed by Ofc Cuevas. Offender Hamlet became combative. I Sgt Radats gave Offender Hamlet a direct order to turn around and cuff up. I Sgt Radats got one arm on offender Hamlet cuffed, and then he began to push away from myself, and Officer Cuevas. Offender Hamlet was placed on the ground and cuffs were placed on the offender.

(ECF 15-1.) Officer Cuevas and Officer S. Seigh also provided statements mirroring the allegations in the conduct report. (ECF 15-2; ECF 15-3.) Officer Cuevas' statement reads as follows:

> On 10/14/18 at approx. 11:22, I officer R. Cuevas was in the dayroom at ISO when I heard officer A. Seigh yelling from West 1, "Hey! Stop!". I officer Cuevas and Sgt Radats ran to West 1 and seen [sic] that offenders Hamlet, Kevin #892772 and Ensign, John #190145 fighting in row 10. Sgt Radats called a 10-10, and sprayed a one second burst of OC to the facial areas of both offenders. Offender Ensign became compliant with orders to stop fighting, and laid on the floor, and complied with orders to be cuffed by myself. Offender Hamlet became combative. Sgt Radats gave Offender Hamlet a direct order to turn around and cuff up. Sgt Radats got one arm on offender Hamlet cuffed, and then he began to push away from Sgt Radats and I, Officer Cuevas. Offender Hamlet was placed on the ground and cuffs were placed on the offender. Both offenders were escorted off of the dorm by I Ofc Cuevas, and Sgt Radats. First responders Sgt Alvaro Canchola, and Lt. Keith Wilson arrived on the unit and escorted Offenders Hamlet and Ensign off unit.

(ECF 15-2.)

Officer Seigh's statement reads as follows:

3

> On 10/14/18 at approx. 11:22, I officer A. Seigh was working in ISO West 1, and chow lines were returning to the dorm. As I was watching the dorm, I seen [sic] offenders Hamlet #892772, and Ensign #190145 fighting in row 10. I yelled for the offenders to stop. Sgt Radats and officer Cuevas came onto the dorm at this time. Sgt Radats called a 10-10 over the radio, and administered a one second burst of OC to the facial areas of each offender. Sgt Radats and Ofc Cuevas used physical handling and mechanical restraints to subdue offenders Hamlet and Ensign. The offenders were escorted off of the dorm.

(ECF 15-3.)

In addition, an incident report was completed, offering the following description of the incident:

> On 10-14-18 at 11:22am Sgt. Kaitlyn Radats (WF) and Officer Raphael Cuevas (H) were in the ISO Day Room when they heard Officer Ashley Seigh (WF), who was working West 1 Dorm, yelling "Hey Stop!". Sgt. Radats and Ofc. Cuevas went to the West 1 Dorm where they observed offender's [sic] Hamlet, Kevin #892772 (W) W1-R10-2 and Ensign, John #190145 (W) W1-R10-2B striking each other with closed fists. At this time Sgt. Radats called a 10-10. The two offenders were not responding to verbal orders to stop fighting and Sgt. Radats deployed her OC streamer onto both offenders. Sgt. Radats and Ofc. Cuevas then were able to restrain both offenders. First Responders (Lt. Carl Tibbles (W), Sgt. Alvero Canchola (H) and Lt. Keith Wilson (B)) arrived at the scene and transported both offenders to ISP where they were checked by Medical Staff and given a 10 minute decontamination shower. Offender Hamlet was found to have a small cut on the top of his head, no other injuries reported. Offender Hamlet will be moved to DCH 101E and offender Ensign to DCH 222W. Mr. Jack Hendrix was left a voicemail and sent an email regarding the moves to ISP. Warden Neal, Deputy Warden Payne and major Jason Nowatzke were notified. RDC# 2018-10-122.

(ECF 15-4.)

Hamlet was charged with violating IDOC B-212, which prohibits "[c]ommitting a battery upon another person." (ECF 15-11 at 5.) Hamlet did not ask to call any witnesses at his hearing. (ECF 15-5 at 1.) He asked that camera evidence be reviewed, although no direct view was available. (ECF 15-5 at 1.)

At his hearing, Hamlet indicated that he and Offender Ensign were "just joking around" and "[t]here were no punches." (ECF 15-7.) He further explained that he was injured when the bunk fell on him, not by Offender Ensign. (*Id.*) He also provided the DHO with a written statement. (ECF 15-8.) In his statement, Hamlet writes:

> This was a situation that was blown <u>completely</u> out of control. Offender J. Ensign, and myself were wrestling, numerous inmates and even Ofc. Seigh watched us. "No" punches were thrown and we were just playing around. C.O. Seigh knew we weren't fighting which is why she (the dorm officer) <u>never</u> called a signal. (10-10). Somehow Sgt Radat's & C.O. Cuevas run in our dorm (which Ensign & myself didn't see because we were wrapped in sheets) I am sprayed with "OC," I'm blinded and feel someone on my back. Next thing, the top bunk slams down on my head. This was when I sustained my injuries. Ensign <u>never</u> hit me! The C.O.'s never identified themselves and I struggled to get the chemical out of my eyes and grab ahold of my head. I could not see, and <u>never</u> became "combative" but was only trying to protect my life from the immediate danger of what was happening.
>     The Conduct Report <u>never</u> describes any punches or violent actions, which describe a B212. I was injured by the bunk falling on me. C.O. Seigh never called a signal, nor wrote the conduct report, and finally no Notice of Segregation was given as required by IDOC policy #02-04-102.

(ECF 15-8.)

Following a hearing, Hamlet was found guilty. In reaching this conclusion, the DHO considered staff reports, the statement of the offender, evidence from witnesses,

5

the incident report, and video evidence, although the incident itself was not viewable. (ECF 15-7.) The DHO concluded that Hamlet was guilty because the "conduct report is clear and concise" and the "[i]ncident report and witness statement supports the charge." (*Id.*)

Adequacy of the Conduct Report

Hamlet argues that his Conduct Report was inadequate because the dorm officer that witnessed the incident, Officer Seigh, was in a better position to write the report and because it does not allege facts that constitute a battery. Due Process requires that Hamlet receive notice of the factual allegations of the charge at least 24 hours before the hearing. *Wolff*, 418 U.S. at 564. This requirement is satisfied so long as the underlying basis of the charge was adequate to give the prisoner notice of the allegations against him. *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003). Hamlet received a copy of the report of conduct on October 15, 2018, indicating that he was being charged with battery based on the fight that occurred between him and Offender Ensign the previous day. (ECF 15-2.) He also received a copy of the screening report, which identified the offense as battery in violation of 212. (ECF 15-5.) Thus, he received notification of the factual basis of the charge. The officer that wrote the conduct report was directly involved in the incident and reported that he saw Hamlet and Offender Ensign fighting. The facts contained in the conduct report provided Hamlet with all the information he needed to defend against a charge of battery, and his due process rights were not violated. *Hanks*, 326 F.3d at 911. Therefore, Hamlet is not entitled to habeas corpus relief

6

on this ground. Whether the conduct described in the report was sufficient to constitute a battery will be addressed further below.

Denial of Evidence

Next, Hamlet claims that he was denied evidence. More specifically, he alleges that he was denied copies of the witness statements relied upon by the DHO. Hamlet had a right to request evidence in his defense, *see Wolff*, 418 U.S. at 566, but he did not necessarily have a right to personally review that evidence. *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001) ("prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public . . . "). Here, however, the evidence at issue is not evidence that Hamlet requested – he did not request any witness statements.[2] Furthermore, neither Officer Cuevas's statement nor Officer Seigh's statement were exculpatory. It is not clear if, when the DHO says she relied upon witness statements, if she is referring only to the written statements of Officer Cuevas and Officer Seigh or if she is also referring to the recorded statements of Hamlet and Officer Seigh, but the court has reviewed all witness statements contained in the administrative record and none contain any exculpatory evidence. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence). Exculpatory in this context means evidence which "directly

---

[2] In his petition, Hamlet indicates that he was not permitted to call witnesses. (ECF 1 at 2.) He does not develop this argument, though. He has not identified any witness he wished to obtain a statement from, and he specifically indicated that he did not want to call any witnesses in the Screening Report. (ECF 15-5.)

7

undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Because Hamlet was not denied any exculpatory evidence, the DHO's consideration of witness statements that were not provided to Hamlet prior to his hearing did not violate Hamlet's due process rights. *White*, 266 F.3d at 767. Therefore, this is not a basis for granting habeas corpus relief.

Sufficiency of the Evidence

In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

The DHO had sufficient evidence to find Hamlet guilty of this offense. The offense of battery is not defined by the IDOC beyond indicating that one is guilty when he commits a battery on another person. (ECF 15-11 at 5.) So, presumably the common law definition of battery applies. At common law, a battery "consisted of the intentional application of unlawful force against the person of another" and the element of force could "be satisfied by even the slightest offensive touching." *Johnson v. United States*, 559 U.S. 133, 139, 130 S. Ct. 1265, 1270, 176 L. Ed. 2d 1 (2010). Using this definition, both the Conduct Report and the other officers' statements contained sufficient information to find Hamlet guilty. The DHO specifically indicates that she relied upon the incident report, too, and it indicates that Hamlet and Offender Ensign were "striking each other with closed fists." (ECF 15-4.) It was not arbitrary for the DHO to conclude that Hamlet committed a battery when three officers reported that they saw Hamlet and Offender Ensign fighting, and when the incident report provides further details – namely that they were striking one another with closed fists. This is some evidence that Hamlet committed the offense of battery. While Hamlet argued that "no punches were thrown" and that he was engaged in mere horseplay, there is no requirement that punches be thrown. Furthermore, the DHO was not required to credit his version of events. *McPherson*, 188 F.3d at 786 (the court is not "required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence.").

Therefore, the court concludes that the DHO's finding that Hamlet was guilty was neither arbitrary nor unreasonable in light of these facts.

Sufficiency of the DHO's Written Statement

Hamlet argues that the DHO's statement of reasons was inadequate because it stated only that the "[c]onduct report is clear and concise. Incident report and witness statement supports the charge. I am finding him Guilty." (ECF 1 a t 2; ECF 15-5.) Respondent argues that this ground was procedurally defaulted because Hamlet did not raise them in his administrative appeals. (ECF 15 at 11-13.) In habeas corpus proceedings, the exhaustion requirement is contained in 28 U.S.C. § 2254(b).

> Indiana does not provide judicial review of decisions by prison administrative bodies, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied by pursuing all administrative remedies. These are, we held in *Markham v. Clark*, 978 F.2d 993 (7th Cir. 1992), the sort of "available State corrective process" (§ 2254(b)(1)(B)(I)) that a prisoner must use. Indiana offers two levels of administrative review: a prisoner aggrieved by the decision of a disciplinary panel may appeal first to the warden and then to a statewide body called the Final Reviewing Authority. Moffat sought review by both bodies, but his argument was limited to the contention that the evidence did not support the board's decision. He did not complain to either the warden or the Final Reviewing Authority about the board's sketchy explanation for its decision. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), holds that to exhaust a claim, and thus preserve it for collateral review under § 2254, a prisoner must present that legal theory to the state's supreme court. The Final Reviewing Authority is the administrative equivalent to the state's highest court, so the holding of *Boerckel* implies that when administrative

> remedies must be exhausted, a legal contention must be
> presented to each administrative level.

*Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th Cir. 2002). In his administrative appeals, Hamlet makes no reference to the inadequacy of the DHO's statement of reasons for finding him guilty. (ECF 15-9; ECF 15-10.) Thus, he has procedurally defaulted on this ground. Furthermore, Hamlet has not demonstrated cause and prejudice for his procedural default. *See Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013).[3]

Severity of Sanction / Equal Protection

Hamlet also argues that the penalty imposed against him was too great for the alleged offense and, more specifically, that it is too great relative to that of the other individual involved in the incident. Under the Disciplinary Code for Adult Offenders, the maximum allowable loss of earned credit time for a class B offense is three months. (ECF 15-12 at 38.) Hamlet was sanctioned with a loss of thirty days of credit time. (ECF 15-7.) Hamlet's sanction fell within the guidelines, and the harshness of his sentence does not justify habeas relief.

Hamlet asserts that Offender Ensign was charged with a lesser offense and received a considerably less harsh punishment; specifically, he did not lose any credit time. Hamlet asserts that the difference is attributable to their races – according to the IDOC's offender database, Offender Ensign is white and Hamlet is Hispanic. "To

---

[3] Hamlet filed a traverse in which he contends that he has not been procedurally defaulted, but he did not argue that his default should be excused. (ECF 20 at 2.)

establish liability for an equal protection violation, a plaintiff must establish that the defendant acted with a discriminatory purpose and discriminated against him because of his membership in an identifiable group." *See Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 697 (7th Cir. 2015). While Hamlet may believe that he received a more harsh sentence than the other individual involved because of his race, he offers nothing more than an unsupported conclusion that race played a role. Offender Ensign's disciplinary records are not before this court, but assuming for the moment that he was charged with a lesser offense and received a lesser penalty, this does not prove discrimination. Hamlet is not entitled to parity, and – at least in the absence of any evidence of racial discrimination - due process does not mandate that he receive an explanation for the alleged disparity. "[T]he failure to punish one individual does not suggest the invalidity of another's sentence." *Higgason v. Lemmon*, 6 F. App'x 433, 436 (7th Cir. 2001). He received a sentence that was less than the maximum for the offense, and other than his sentence being more harsh than the other individual involved, he offers nothing suggesting that the motive for the disparity was race. Thus, this is not a basis for granting habeas relief.

CONCLUSION

Because each of the grounds raised by Hamlet lacks merit, his habeas petition cannot be granted. If Hamlet wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma

pauperis on appeal because, pursuant to 28 U.S.C. § 1915(a)(3), an appeal in this case could not be taken in good faith.

For these reasons, Kevin D. Hamlet's petition for writ of habeas corpus is DENIED. The clerk is DIRECTED to close the case.

SO ORDERED on February 4, 2020

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT